**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MONICA CARAFFA, for herself and others similarly situated, | : | |
| *Plaintiff*, | : | CIVIL ACTION NO. 2:24-cv-02214 |
| vs. | : | |
| TD BANK, N.A. | : | |
| *Defendant*. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Date: July 31, 2024

Michael S. Zullo
J. Colin Knisely
Katherine R. Lynch
**Duane Morris LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
MSZullo@duanemorris.com
CKnisely@duanemorris.com
KRLynch@duanemorris.com
Telephone: +1 215 979 1000
Fax: +1 215 979 1020

***Attorneys for Defendant TD Bank, N.A.***

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......................................................................................................1

II. ALLEGED FACTS RELEVANT TO THIS MOTION ....................................................3

III. LEGAL ARGUMENT...................................................................................................7

A. THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM. ........................................................................................ 7

1. Plaintiff Fails to Adequately Allege the Contents of Any Electronic Communication that TD Bank Intercepted, Disclosed, or Used................ 8

a. Plaintiff Fails to Allege Any Facts Setting Forth How Her Specific Interactions with the TD Bank Website Could Have Conveyed the "Contents" of a Communication. ....................9

b. The Button Clicks, Webpage Views, and Search Queries that the Facebook Tracking Pixel Is Allegedly Capable of Collecting Are Not the "Contents" of a Communication. .............14

2. Plaintiff Failed to Plead that the Alleged Tracking Pixel Qualifies as a Device. ........................................................................................... 16

3. Alternatively, Plaintiff Cannot Establish that the At-Issue Website Interactions Constituted "Electronic Communications" Because the Tracking Pixel Falls Within WESCA's Tracking Device Exception. ...... 19

IV. CONCLUSION...........................................................................................................21

# TABLE OF AUTHORITIES

**Federal Cases**


*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................8

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ....................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................8

*Burns v. Heyns*, 2015 WL 4391983 (W.D. Mich. July 15, 2015)....................16

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023) ....................2

*Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58 (W.D. Pa. 2023).................... 10-11, 13, 15, 21

*Esparza v. Lenox Corporation*, No. C 22-09004 WHA, 2023 WL 2541352 (N.D. Cal., Mar. 16, 2023) ....................2

*Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107 (3d Cir.2004) ....................11

*Garcia v. Build.com, Inc.*, 22-CV-01985-DMS-KSC, 2023 WL 4535531 (S.D. Cal. July 13, 2023) ....................2

*Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318 (S.D. Fla. 2021) ....................15, 21

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015) ....................10

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................2, 17

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447 (E.D. Pa. Dec. 13, 2007) ....................11

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012)....................17

*Love v. Ladder Fin., Inc.,* 23-CV-04234-VC, 2024 WL 2104497 (N.D. Cal. May 8, 2024) ....................2

*Martin v. Sephora USA, Inc.*, No. 122CV01355JLTSAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ....................19

*Martin v. Sephora USA, Inc.*, No. 122CV01355JLTSAB, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023)....................19

*Murphy v. Thomas Jefferson University Hospitals, Inc.*, No. CV 22-4674, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023).................... 11-12

*Santoro v. Tower Health*, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024).................... 13-14

*Smart v. Main Line Health*, CV 22-5239, 2024 WL 2943760 (E.D. Pa. June 10, 2024) (Scott, J.)....................12, 14

*Vonbergen v. Liberty Mut. Ins. Co.*, CV 22-4880, 2023 WL 8569004 (E.D. Pa. Dec. 11, 2023)....................20, 22

*Williams v. What If Holdings, LLC*, C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)....................2

*Yale v. Clicktale, Inc.*, 20-CV-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)....................2

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................15

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014)....................10, 15

**State Cases**

*Com. v. Proetto*, 771 A.2d 823 (Pa. Super. Ct. 2001) *aff'd*, 575 Pa. 511, 837 A.2d 1163 (2003)....................11

*Commonwealth v. Zortman*, 23 A.3d 519 (2011)....................18

*Humphreys v. SureTec Ins. Co.*, 311 A.3d 1175 (Pa. Commw. Ct. 2024)....................18

*Jacome v. Spirit Airlines Inc.,* No. 2021-000947-CA-01, 2021 WL 3087860 (Fla.Cir.Ct. June 17, 2021)....................21

*O'Donoghue v. Laurel Sav. Ass'n*, 728 A.2d 914 (Pa. 1999)....................19

*In re Tr. B Under Agreement of Richard H. Wells Dated Sept. 28, 1956*, 311 A.3d 1057 (Pa. 2024)....................18

**Federal Statutes**

Gramm-Leach-Bliley Act (GLBA).................... 4, 13-15

Health Insurance Portability and Accountability Act (HIPPA)....................14

Federal Wiretap Act.................... 11-14, 19, 21

**State Statutes**

1 Pa. C.S.A. § 1921....................19

18 Pa. C.S.A. § 5702....................9, 17-18, 21-22

18 Pa. C.S.A. § 5703....................9, 17, 20

Fla. Stat. § 934.02(12)(c) .......... 21

**Rules**

Fed. R. Civ. P. 8 .......... 8

Fed. R. Civ. P. 8(a)(2) .......... 8

Fed. R. Civ. P. 12(b)(6) .......... 8

**Non-Periodical Publications**

Merriam-Webster, Inc., The Merriam-Webster Dictionary 33, 200 (2022) .......... 18

Merriam-Webster, Inc., The Merriam-Webster Dictionary 203 (1974) .......... 18

**Other Authorities**

Pennsylvania House Journal, 2023 Reg. Sess. No. 47 .......... 19

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

## I. INTRODUCTION

Plaintiff, Maria Caraffa's ("**Plaintiff**") claim against TD Bank, N.A. ("**TD Bank**") is one with which federal and state courts across the country are becoming all too familiar. In hundreds of near-identical lawsuits, plaintiffs and their counsel seek to weaponize decades-old wiretapping statutes and their accompanying statutory fines and assert them in a novel application for which the statutes were never intended. Plaintiffs have targeted numerous industries and companies and relied on detailed and lengthy descriptions of well-known technologies with screenshots of code accompanied by broad inflammatory accusations to present an image of a nefarious Orwellian surveillance state. In short, in an effort to extract a payment, Plaintiff and similar plaintiffs across the country seek to turn every interaction with a website into a basis for liability under decades-old wiretap statutes.

Notwithstanding the various technologies plaintiffs target, the gist of all of these actions is that the use of near-ubiquitous tools that facilitate website functioning and support e-commerce present the modern-day equivalent of a wiretap. It does not. Moreover, the plaintiffs' overreliance on screen shots of computer code and excessive paragraphs devoted to explaining the business model of nonparties to these lawsuits is nothing more than a smoke screen to hide the fact that the named plaintiffs in these actions, as is the case here, rarely, if ever, have legitimate interactions with the targeted websites and, as is the case here, rarely, if ever, can identify actual harm from their interactions.

A cursory review of the developing jurisprudence in this area shows how plaintiffs' theories of liability have shifted over time in response to unfavorable court decisions throughout the country. The earliest iterations of these lawsuits alleged direct violations of the California

Invasion of Privacy Act ("**CIPA**"), singling out the use of session replay software.[1] When courts began routinely dismissing wiretapping claims based on the use of session replay software,[2] plaintiffs chose a new target—website chat features that allow users to communicate with customer service representatives. These cases met the same fate as those based on session reply software.[3] Thus, plaintiffs shifted to a new target—the pixel trackers operating on nearly every website that transmit "cookies" between servers.

Regardless of the specific technology that plaintiffs put at issue, the overall strategy remains the same: file mostly copy-and-pasted complaints that are comprised almost entirely of allegations that are unconnected to the actual plaintiff bringing the lawsuit and rely on undefined technological jargon to distract from the conclusory, bare-bones assertions on which the plaintiffs base their entitlement to relief. Plaintiff's Complaint is no exception.

The Court should reject Plaintiff's attempt to stretch the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("**WESCA**") —a wiretapping statute enacted in 1978—beyond its limits and dismiss the Complaint for failure to state a claim upon which relief may be granted for the following four reasons:

- ***First***, Plaintiff has failed to allege any facts to establish the interception, use or disclosure of the "contents" of any communication as a result of ***her*** specific interactions with the TD Bank website. Plaintiff cannot merely allege that a pixel tracker allegedly operating on TD Bank's website is purportedly *capable* of

[1]Session replay software is a technology that tracks a user's interactions with a website (*i.e.*, their clicking, scrolling, swiping, hovering and typing) and creates a stylized recording of those interactions and inputs.

[2] *See, e.g., Love v. Ladder Fin., Inc.,* 23-CV-04234-VC, 2024 WL 2104497 (N.D. Cal. May 8, 2024)*; Williams v. What If Holdings*, *LLC*, C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022); *Yale v. Clicktale, Inc*., 20-CV-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021); *Graham v. Noom, Inc*., 533 F. Supp. 3d 823 (N.D. Cal. 2021).

[3] *See, e.g., Byars v. Hot Topic, Inc*., 656 F. Supp. 3d 1051 (C.D. Cal. 2023); *Garcia v. Build.com, Inc*., 22-CV-01985-DMS-KSC, 2023 WL 4535531, at *5 (S.D. Cal. July 13, 2023); *Esparza v. Lenox Corporation*, No. C 22-09004 WHA, 2023 WL 2541352 (N.D. Cal., Mar. 16, 2023).

collecting the "contents" of a hypothetical customer's communications with the website. She must show that it applied to the "contents" of ***her*** communication.

- ***Second***, even if Plaintiff had alleged that ***her*** data was collected during ***her*** interactions with the TD Bank website, which she has not, the WESCA claim would still be insufficient as a matter of law because raw record data (*e.g*., button clicks, page views, and search queries) does not qualify as the "contents" of a communication under WESCA.

- ***Third***, the computer code at the heart of Plaintiff's complaint is not a "device" as that term is used in WESCA. Thus, WESCA is inapplicable here.

- ***Fourth,*** even assuming, *arguendo*, that this Court were to find that the computer code fit the definition of "device" under WESCA, it is not one that intercepts "electronic communications," and thus, there is no WESCA liability.

## II. ALLEGED FACTS RELEVANT TO THIS MOTION

Plaintiff's claim against TD Bank arises out of her visits to the TD Bank website "on or around March 13, 2024". Compl. ¶ 6. Specifically, Plaintiff alleges that, "[u]pon accessing the [TD Bank website] . . . [she] searched for financial information [,]" and the interactions through which she effected the "search" were "intercepted in transit by Facebook" in violation of WESCA. *Id.* The at-issue interception is allegedly accomplished by "a piece of code" that operates on the TD Bank website—namely, the "Facebook Tracking Pixel." Compl. ¶ 27.

Plaintiff fails to allege *any other* facts about ***her*** interaction with the TD Bank website, such as, for example, what "financial information" ***she*** searched for, what (if any) of ***her*** "financial information" ***she*** disclosed, what products ***she*** inquired about, or what part of the website ***she*** visited. In fact, apart from making the conclusory allegation that the interactions resulted in the conveyance of "nonpublic personal information" as defined under the Gramm-Leach-Bliley Act ("**GLBA**"),[4] the Complaint offers no details about the "financial information"

[4] *See, e.g*., Compl. ¶ 6.

for which Plaintiff allegedly searched and fails to allege facts demonstrating how a general search on a third party website for "financial information" resulted in the input, much less disclosure, of ***her*** personal information.

Nor does the Complaint provide any information about the mechanisms through which Plaintiff effected the alleged "searches" (*i.e.*, navigating through different web pages, clicking buttons, or entering actual search queries). It thus leaves TD Bank and the Court in the dark as to the behaviors in which Plaintiff engaged on the TD Bank website. While Plaintiff alleges that the Facebook Tracking Pixel installed on the TD Bank website captures the webpage views, button clicks, and search queries,[5] Plaintiff sets forth no factual allegations about the specific webpages ***she*** viewed, texts ***she*** entered, buttons ***she*** clicked, or search queries ***she*** ran. In fact, Plaintiff never specifically alleges that ***she*** engaged in any of these activities.

In short, nothing in the Complaint relates to ***Plaintiff's*** actual interaction with the TD Bank website.[6] Instead, the bulk of the allegations relevant to the TD Bank website—which themselves constitute but a fraction of the Complaint's allegations—describe the actions that a *hypothetical* user *could* take when visiting the TD Bank website. For example, the Complaint alleges that a *hypothetical* user *may* use the TD Bank website to book an appointment with TD Bank and open a TD Bank account and describes the information that the *hypothetical* user may input into the TD Bank website in connection with those activities,[7] but Plaintiff never alleges that she booked an appointment or opened an account with TD Bank. Below is a small sample

---

[5] Compl. ¶¶ 46-47.

[6] Paragraphs 8-18 describe WESCA and the GLBA. Paragraphs 19-38 describe "Facebook's Advertising Platform and the Meta Pixel". Paragraphs 39-63 describe the mechanics by which the pixel could allegedly track a hypothetical "website user's" communications. Paragraphs 64-75 describe TD Bank and Facebook's privacy policies. Paragraphs 76-89 are class related allegations.

[7] Compl. ¶¶ 43-44.

of the actual language from the Complaint demonstrating the focus on a hypothetical user's interaction with the TD Bank site:[8]

> 42. Website users' confidential communications are the product of Website users affirmatively entering, and interacting with, information on the Website (*i.e.*, the confidential communications are not procedurally or automatically generated). Instead, as set out below, the confidential communications stem from Website users typing into data fields, conveying responses to questions and prompts, and actively making other selections. All of the foregoing is information created through the intent of Website users: information created by and in response to Website users' communicative inputs; information created by and in response to Website users' intended messages to the Website and Defendant; and information created by and in response to Website users' having conveyed and expressed their respective desires that the Website would supply them with certain, highly personalized, types of information and/or responses.
>
> 43. Website users may book a TD appointment. To do so, they use the Website to indicate that they wish to "[b]ook an [a]ppointment," pick an appointment type (i.e., personal or small business), notify Defendant of that which they "want to talk about" (i.e., banking, investing, home lending, or services), pick a "topic" within said area (i.e., for banking, "[o]pen a checking account" or "[o]pen a savings account"), tell Defendant whether they are an existing TD customer, choose a location, appointment date, and appointment time, enter their name, phone number, email, and other comments, and submit these details for booking:

Similarly, the allegations describing how the Facebook Tracking Pixel, operates—and, in particular, how this tool operates on the TD Bank website—are similarly sparse. Plaintiff alleges that, when a user interacts with a website, the Facebook Tracking Pixel, which is a piece of code, "surreptitiously directs the user's browser to simultaneously send a separate message to Facebook's servers [,]" and "[t]his second, secret transmission contains the original GET request sent to the host website, along with additional data that the Pixel is configured to collect." Compl. ¶ 27. Plaintiff never offers any definition of GET requests or otherwise explains how

---

[8] *Id.*

they operate or the function they serve. Nor does she provide any information about the "additional data," if any, collected by the Facebook Tracking Pixel installed on the TD Bank website. Plaintiff relies instead on inflammatory language like "secret instructions" and conclusory allegations that the information transmitted to Facebook is "the communication's content".[9]

Elsewhere, Plaintiff alleges that the Facebook Tracking Pixel on the TD Bank website captures webpage views, button clicks, and search queries.[10] But because the Complaint fails to specify what information is conveyed by the GET request and what "additional data," if any, is collected by the Facebook Tracking Pixel operating on the TD Bank website, it is unclear how this alleged interception occurs. The remaining allegations merely (1) describe Facebook's business model and (2) discuss the various tools that Facebook offers—*tools that Plaintiff never specifically alleges were implicated through **her** interactions with the TD Bank website*—and the purposes they may serve. *See, e.g.*, Compl. ¶¶ 19-26, 31-38. For example, Plaintiff alleges that the Facebook Tracking Pixel operating on the TD Bank website employs a feature called "Advanced Matching" that "scan[s] form fields containing a user's email address, first name, last name, phone number, gender, zip code, city and state[,]" but Plaintiff never alleges that she inputted any of this information during her visit to the TD Bank website. Compl. ¶¶ 59-61.[11] Notably, despite devoting nearly fifty paragraphs to detailing how Facebook is allegedly violating consumer's privacy, Plaintiff has not named Facebook as a party to this litigation.

---

[9] Compl. ¶ 28.

[10] Compl. ¶¶ 46-47.

[11] Mindful of the rule that the Court must accept all allegations in the complaint as true for purposes of this motion, TD Bank nevertheless notes that this allegation is patently false.

## III. LEGAL ARGUMENT

### A. THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM.

A complaint that "fail[s] to state a claim upon which relief can be granted" is subject to dismissal. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). A pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

The Court in *Twombly* explained that a complaint is read in conjunction with Federal Rule of Civil Procedure 8(a)(2), which requires a "showing" that the plaintiff is entitled to relief "rather than a blanket assertion" of entitlement to relief. *Id*. at 556, n.3. While Rule 8 does not require "detailed factual allegations," it nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Here, Plaintiff fails to allege facts that state a plausible claim for a violation of WESCA, which is the sole claim asserted. TD Bank therefore respectfully submits that the Court must dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### 1. Plaintiff Fails to Adequately Allege the *Contents* of Any Electronic Communication that TD Bank Intercepted, Disclosed, or Used.

A violation of WESCA occurs only when a party intercepts, uses or discloses the ***contents*** of an electronic communication. Specifically, WESCA prohibits the following three types of conduct:

- (1) "[I]ntentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] any other person to intercept or endeavor to intercept any wire electronic or oral communication [,]" 18 Pa.C.S. § 5703(1), and an "interception," as defined by WESCA, is the "[a]ural or other acquisition of the ***contents*** of any wire, electronic or oral communication through the use of any electronic, mechanical or other device [,]" *id*. at § 5702;

- (2) "[I]ntentionally disclos[ing] or endeavor[ing] to disclose to any other person the ***contents*** of any wire, electronic, or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication [,]" *id.* at § 5703(2); and

- (3) "[I]ntentionally us[ing] or endeavor[ing] to use the ***contents*** of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication." *Id* at § 5703(3).[12]

Here, Plaintiff's WESCA claim must fail as a matter of law because she has failed to allege any facts demonstrating the interception, use or disclosure of the ***contents*** of any communication connected to ***her*** specific interactions with the TD Bank website. Plaintiff cannot overcome this fatal flaw merely by alleging that the Facebook Tracking Pixel is purportedly *capable* of collecting certain information (*i.e.*, clicking buttons, viewing different webpages, running search queries) because these interactions do not meet the definition of "***contents***" as used in WESCA.

[12] Emphasis added throughout unless indicated to the contrary.

a. *Plaintiff Fails to Allege Any Facts Setting Forth How **Her Specific** Interactions with the TD Bank Website Could Have Conveyed the "**Contents**" of a Communication.*

WESCA defines the "contents" of a communication as "any information concerning the substance, purport, or meaning of that communication." 18 Pa.C.S. § 5702. Courts have interpreted this to "refer[] to the intended message conveyed by the communication," not the "record information regarding the characteristics of the message that is generated in the course of the communication." *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 68 (W.D. Pa. 2023) (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135–36 (3d Cir. 2015) (emphasizing the "important difference between extrinsic information used to route a communication and the communicated content itself"). Thus, to adequately plead a WESCA claim, a plaintiff must do more than merely "allege the potential capabilities" of a particular mechanism that purportedly intercepts information. *Cook*, 689 F. Supp. 3d at 69. Instead, the plaintiff must set forth facts alleging that the purported third-party trackers "in fact, harnessed the capabilities she describes, and it had the result of capturing the ***contents*** of ***specific*** communications." *Id.*

Plaintiff falls woefully short of this requirement. In the first place, Plaintiff alleges no facts concerning ***her*** alleged "communication," let alone the "contents" of the communication. The entire sum of Plaintiff's alleged interaction with the TD Bank website is the "search for financial information" on the website.[13] The remainder of the Complaint merely describes—at great length no less—the features offered by the TD Bank website with which a *hypothetical* user *may* engage when navigating the website. But it includes no factual allegations describing

[13] Compl. ¶ 6.

the specific activities in which ***Plaintiff engaged*** when ***she*** visited TD Bank's website. Such bare bone allegations have routinely been found to be inadequate to sustain a WESCA claim.

For example, in *Cook*, the court held that the plaintiff failed to state a claim for a violation of WESCA based on a company website's use of session replay code—a software that "allows website operators to record, save, and replay website visitors' interactions with a website" (*e.g*., mouse movements, clicks, scrolls, zooms, keystrokes, text entry). 689 F. Supp. at 61–62. The court reasoned that plaintiff's allegations that the at-issue code captured her "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time" were insufficient, without more, to state a claim for a violation of WESCA because such minimal averments "lack[] critical necessary details for the Court's analysis of the type of information allegedly captured by [defendant]'s Session Replay Code." *Id* at 69. In other words, plaintiff failed to provide critical facts such as: "What mouse movements? What did she hover over? What did she click? Which keystrokes did she enter? What kind of webpages did she visit?" *Id.* The court thus concluded that plaintiff failed to state a claim for a violation of WESCA because, *inter alia*, these pleading deficiencies "forced [the Court] to speculate about how [plaintiff]'s visits to [defendant]'s website unfolded, which it cannot do." *Id.* at 70.

Similarly, the court in *Murphy v. Thomas Jefferson University Hospitals, Inc*. also dismissed a wiretapping claim—this time under the federal Wiretap Act[14]—because the plaintiff

[14] WESCA is the Federal Wiretap Act's "Pennsylvania analog." *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001). "Because the relevant provisions and statutory definitions (*e.g.*, "intercept" and "contents") from [WESCA] are identical to those in the [federal Wiretap Act], the Court can look to decisions applying those provisions and definitions for guidance." *Cook.*, 2023 WL 5529772, at *6 n.6 (citing *Com. v. Proetto*, 771 A.2d 823, 829 (Pa. Super. Ct. 2001) *aff'd*, 575 Pa. 511, 837 A.2d 1163 (2003)). *See also Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *3 (E.D. Pa. Dec. 13, 2007) ("[WESCA] tracks the language set forth in the Federal [Wiretap] Act, and has been interpreted identically.") (citing *Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 113 n. 6 (3d Cir.2004)).

failed to allege the content of the specific communications purportedly intercepted by code operating on the defendant healthcare system's website. No. CV 22-4674, 2023 WL 7017734, at *3–4 (E.D. Pa. Oct. 10, 2023) (Schiller, J.). The plaintiffs in *Murphy* alleged that a health system's website's use of the ***same*** technology at-issue here—a Facebook pixel tracker—violated the Wiretap Act because plaintiffs used the health system's website to communicate with their doctors, transmitting "a wide range of personal, private healthcare information" and "personally-identifiable patient health information" that "pertained to their 'medical symptoms, conditions, and concerns, medical appointments, medical tests and test results, doctors' visit notes, medications and treatments, and health insurance and medical bills.'" *Id.* at *1, 3. However, plaintiffs failed to allege that "any ***specific*** test results, diagnoses, or sensitive messages were intercepted or improperly disclosed." *Id.* at *3. The court thus dismissed plaintiffs' claims under the federal Wiretap Act because, "[t]o provide [defendant health system] with sufficient notice of its alleged misconduct, Plaintiffs must offer more detailed descriptions of the communications and information that they assert were intercepted." *Id.*

Other courts in the Eastern District of Pennsylvania have also dismissed claims under the federal Wiretap Act based on a website's alleged use of tracking pixels. Most recently, the court dismissed a pixel claim brought under the federal Wiretap Act where the complaint only generally averred that plaintiff's communications with the defendant health system's website "included individually-identifiable patient health information about his past, present, or future health conditions, including requests for information about specific Main Line Health providers and locations, and information about specific health conditions, treatments, and services" and "provid[ed] an example of a search by a *hypothetical visitor* to [defendant's website] . . . ." *Smart v. Main Line Health*, CV 22-5239, 2024 WL 2943760, at *3 (E.D. Pa. June 10, 2024)

(emphasis in original). There, the court noted that the complaint failed to "allege[] which specific web pages [plaintiff] clicked on for his medical condition or his history of treatment with [defendant]" or "state what specific HIPAA-protected information [plaintiff] *himself* provided to [defendant] via his browsing activity that was subsequently disclosed to Meta[,]" and "consist[ed] of nothing more than bare-bone conclusions which are insufficient to withstand dismissal." *Id.* (emphasis in original).

In another recent case, *Santoro v. Tower Health*, the court likewise concluded that plaintiff's complaint—which also asserted a claim under the federal Wiretap Act against a healthcare provider for use of a pixel—consisted of only the "conclusory or bare-bones allegations" that cannot survive a motion to dismiss. 2024 WL 1773371, at *4 (E.D. Pa. Apr. 24, 2024). Plaintiff there, similar to the Plaintiff here, merely alleged that his website communications with the defendant "included individually-identifiable health information about his past, present, or future health conditions, including requests for information about specific Tower Health Providers and locations, and information about specific health conditions, treatments, and medications." *Id.* But the plaintiff failed to provide any factual allegations detailing any information about plaintiff's specific interactions with defendant's website or his history of medical care with defendant. *Id.*

Like plaintiffs in those cases, the Plaintiff here has failed, as a matter of law, to adequately plead the interception of the "contents" of her communications for purposes of WESCA liability. Plaintiff's inability, or unwillingness, to provide such facts is telling as "[a]ll this information should be available to [Plaintiff]; after all, she is the one who allegedly browsed [TD Bank]'s website." *Cook*, 689 F. Supp. 3d at 69. Aside from the vague allegation that Plaintiff searched for "financial information", the Complaint merely plots the journey that a

*hypothetical* website user *could* take on TD Bank's website. This fails to plausibly allege that any tracking pixels operating on TD Bank's website intercepted the "contents" of any of ***Plaintiff's*** communications.

Plaintiff presents a red herring with her invocation of the GLBA, presumably for the purpose of trying to arouse concern over the potential disclosure of financial information. But the Complaint's repeated conclusory allegation that the communications intercepted by the purported pixel tracker included "nonpublic personal information," as defined by the GLBA, does nothing to save the WESCA claim from dismissal because Plaintiff fails to allege any facts demonstrating how her searching of a third-party website for "financial information" resulted in the disclosure of ***her*** "nonpublic personal information". Nor does Plaintiff allege facts to show that the "contents" of any of her communications contained such "nonpublic personal information". Plaintiff's conclusory allegations that the unspecified "financial information" for which she searched amounts to "nonpublic personal information" under the GLBA are therefore unavailing.

Courts have rejected similar attempts by plaintiffs to invoke the specter of privacy concerns by invoking unrelated privacy statutes. For example, in *Santoro*, plaintiff unsuccessfully argued that the crime-tort exception applied to the federal Wiretap Act because the healthcare system that owned the website disclosed individually-identifiable health information in violation of the Health Insurance Portability and Accountability Act ("**HIPAA**") through the at-issue pixel tracker. 2024 WL 1773371, at *3–4 (E.D. Pa. Apr. 24, 2024). The court rejected this argument and held that plaintiff failed to adequately allege that the information captured by the pixel tracker amounted to individually-identifiable health information under HIPAA because plaintiff's conclusory allegations that his communications

with defendant's website included "individually-identifiable health information" made it impossible for the court to "determine what information [plaintiff] actually communicated to [defendant] via his web browsing" and thus precluded the court from determining "whether that information might be covered by HIPAA." *Id.* At *4. The court reached the same conclusion in *Smart*. 2024 WL 2943760, at *3 (dismissing pixel claim under the federal Wiretap Act where "Plaintiff fail[ed] to state what specific HIPPA(sic)-protected information Plaintiff *himself* provided to Defendant via his browsing activity that was subsequently disclosed to Meta").[15] These cases compel the same result here where Plaintiff has provided no specifics about her interactions with TD Bank's website, thus making it impossible for the Court to determine whether the interactions conveyed information that would constitute "nonpublic personal information" under the GLBA.

b. *The Button Clicks, Webpage Views, and Search Queries that the Facebook Tracking Pixel Is Allegedly **Capable** of Collecting Are Not the "Contents" of a Communication.*

Even if Plaintiff alleged that she engaged in the specific interactions that the pixel tracker operating on the TD Bank website is purportedly capable of collecting during ***her visit*** to the TD Bank website (*i.e*., button clicks, webpage views, or search queries), which she has failed to do, her WESCA claim would still fail as a matter of law because these interactions are not "contents" of a communication. Courts routinely hold that mouse movements, clicks, and pages to which a user travels as a result of those clicks are the "routing" or "record" information that does not qualify as the "content" of "communications." *See, e.g., In re Zynga,* 750 F.3d at 1107 (concluding that the webpages a user views is "record information" that "functions like an 'address[,]'" not the "contents" of a communication); *Yoon v. Lululemon USA, Inc*., 549 F. Supp.

[15] Emphasis in original.

3d 1073, 1082–83 (C.D. Cal. 2021) (holding that the recording of "keystrokes, mouse clicks, [and] pages viewed" does not amount to the interception of "content"); *Goldstein v. Costco Wholesale Corp*., 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) (finding that mouse movements, clicks, and pages visited "d[o] not convey the substance of any communication" because "this mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information . . . obtained through a security camera at a brick-and-mortar store"); *Cook*., 689 F. Supp. 3d at 70 (explaining that mouse clicks and movements are record or routing information because "these movements and clicks literally constitute a record of [a website user]'s movements within a digital space[,]" and "[n]avigating through a website's multiple pages is not the substance of a communication"); *Burns v. Heyns*, 2015 WL 4391983, at *18 (W.D. Mich. July 15, 2015) (holding that "clickstream data"—which contains "the time, order and duration the computer spent on each web page as well as which files were accessed and/or downloaded"—provided only "record information" about internet usage, not the "substance, purport, or meaning" of a communication).

By analogy, this information is akin to providing the phone number dialed by a party and the persons involved in the phone call. It confirms the fact of a communication and the parties to the communication, but it says nothing about the ***contents*** of the communication. Simply put, button clicks and webpage views allegedly collected by the pixel tracker operating on the TD Bank website—data that are merely records of a website users' movements within a digital space—are not "contents" of a communication.

Plaintiff's conclusory allegation that the TD Bank website "contemporaneously intercepts Website users' search queries"[16] is unavailing for the same reason. Even accepting the allegation

[16] Compl. ¶ 46.

as true for purposes of this motion, the search queries allegedly intercepted by the Facebook Tracking Pixel are merely delivery mechanisms that transport a website user from one page of the website to another page. *See Compl.* ¶¶ 45-46.

Further, while Plaintiff merely alleges that hypothetical website visitors *may* enter form-field information into the TD Bank website, she never specifically alleges that she did so, or that the Facebook Tracking Pixel captures this information (*i.e.*, a person's name, address, or other contact information). In any event, such information also does not constitute the "***contents***" of a communication. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (explaining that "the name, address and subscriber number or identity of a subscriber or customer" is "record information[,]" not the contents of a communication) (citation omitted); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (holding that "information about the identities of parties to a communication" is not "content"). Thus, even if Plaintiff had booked an appointment or opened an account on TD Bank's website, which the Complaint does not allege she did, any form-field information, such as her name and other identifying information, entered into TD Bank's website in connection with these activities would not amount to the contents of a communication that could have been intercepted by the alleged tracking pixel.

**2. Plaintiff Failed to Plead that the Alleged Tracking Pixel Qualifies as a Device.**

Plaintiff's claim for a WESCA violation separately fails because the alleged "interception" was accomplished by intangible software, not a "device" as that term is defined by WESCA. WESCA defines "interception," as the "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other ***device***." 18 Pa.C.S. § 5702. All three of the types of conduct prohibited by WESCA—the

(1) interception, (2) disclosure, and (3) use of the "contents" of a wire, electronic, or oral communication—require an "interception." 18 Pa.C.S. § 5703(1)– (3). Accordingly, an interception, use, or disclosure of the "contents" of an electronic communication only violates WESCA if it is accomplished through a device.

An "electronic, mechanical or any other device" as defined by WESCA is "any device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication." 18 Pa.C.S. § 5702. In interpreting and construing the meaning of "device" and "apparatus," the Court must "ascertain and effectuate the intention of the General Assembly and . . . the plain language of the statute is generally the best indicator of such intent." *In re Tr. B Under Agreement of Richard H. Wells Dated Sept. 28, 1956*, 311 A.3d 1057, 1067 (Pa. 2024) (quoting *Commonwealth v. Zortman*, 23 A.3d 519, 525 (2011)). Nothing in the plain language of the definition of device indicates that the Legislature intended it to encompass intangible computer code.[17]

WESCA's legislative history also supports the conclusion that the definition of a "device" under WESCA should not be broadly construed beyond the plain meaning of the term to encompass emerging technologies comprised only of intangible computer code. Section 5702

[17] Courts "ascertain the plain meaning of a statute by ascribing to the particular words and phrases the meaning which they have acquired through their common and approved usage, and in context," and this "legislative meaning" is discerned by examining dictionary definitions. *Humphreys v. SureTec Ins. Co.*, 311 A.3d 1175, 1186 (Pa. Commw. Ct. 2024). Considering the dictionary definitions of "device" and "apparatus" in conjunction with the plain language of the statute leads to the conclusion that a "device" under WESCA is limited to tangible instruments or machinery and does not encompass intangible tools that consist only of computer code. In 1974, Merriam-Webster defined "device" as "a piece of equipment or mechanism for a special purpose." *See* MERRIAM-WEBSTER, INC., THE MERRIAM-WEBSTER DICTIONARY 203 (1974). This edition of Merriam Webster defined "apparatus" as "a set of materials or equipment for a particular use." *Id.* at 49. These definitions remained unchanged in the edition of Merriam Webster published in 2022. *See* MERRIAM-WEBSTER, INC., THE MERRIAM-WEBSTER DICTIONARY 33, 200 (2022).

of WESCA was amended as recently as December of 2023,[18] but the definition of "electronic, mechanical, or other device" remained unchanged—meaning that the General Assembly explicitly chose not to include computer software in the definition of device despite its prevalence in modern society. This decision not to alter the language of this definition underscores the General Assembly's intent to limit WESCA's applicability to tangible instruments and machinery, as the plain meaning of its provisions suggests it should be. *See Martin v. Sephora USA, Inc.*, No. 122CV01355JLTSAB, 2023 WL 2717636, at *17 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, No. 122CV01355JLTSAB, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (rejecting plaintiff's argument that the language of California's analogue to the Federal Wiretap Act should be broadly construed to encompass emerging software technologies, *inter alia*, because the legislature's intent to limit the applicability of the provision to telephone-based communication "is indicated by the fact that the Legislature has amended CIPA many times without altering [the language of the at-issue provision]").

Indeed, in October of 2023, Representative Pielli, seeking support for a bill to renew WESCA, summarized the purpose and impact of WESCA with the following statement:

> This act has proven to be an extraordinary tool for our law enforcement in the prosecution of many crimes since its inception. And now we have the opportunity to pass this bill as amended by my esteemed colleague, Representative Bonner, to further protect our citizens from the nefarious acts of manipulative telemarketers. We also help to protect both our State parole officers and State parolees by including the legal use of body cameras to ensure accountability and fairness, and the same can be said for our commissioned police officers employed by the Department of Corrections.

[18] 2023, Dec. 14, P.L. 425, No. 53, § 1.

Pennsylvania House Journal, 2023 Reg. Sess. No. 47. Conspicuous by its absence is the notion of broadening the definition of "device" to include software or to address in any way websites' near-ubiquitous use of cookies and other tracking technologies comprised only of intangible computer code. *See O'Donoghue v. Laurel Sav. Ass'n*, 728 A.2d 914, 917 (Pa. 1999) (recognizing that courts cannot add by interpretation language "which the legislature has omitted unless the phrase is necessary to the construction of the statute") (citation omitted); 1 Pa. C.S. § 1921 ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.") [19]

The plain meaning of the language comprising WESCA's statutory provisions and WESCA's legislative history thus make clear that the General Assembly never intended the definition of "device" to encompass intangible software code. Here, the only alleged mechanism of interception is a website tracking pixel that Plaintiff describes as a "piece of code" or "software" that is "integrated into [TD Bank's] website[]." Compl. ¶ 27. Plaintiff's WESCA claim—based exclusively on the use of tracking technologies comprised of intangible computer code—must therefore fail as a matter of law.

**3. Alternatively, Plaintiff Cannot Establish that the At-Issue Website Interactions Constituted "Electronic Communications" Because the Tracking Pixel Falls Within WESCA's Tracking Device Exception.**

Assuming, *arguendo*, that this Court found that computer code did qualify as a device under WESCA, which it does not, Plaintiff's WESCA claim would still fail as a matter of law

---

[19] TD Bank is aware that another court in the Eastern District of Pennsylvania has rejected the argument that intangible software does not qualify as a device under WESCA. *See Vonbergen v. Liberty Mut. Ins. Co.*, CV 22-4880, 2023 WL 8569004, at *10 (E.D. Pa. Dec. 11, 2023). However, this decision came out three days before the WESCA amendment that made no mention of code as a device. Moreover, in *Vonbergen*, the court's rejection of this argument was largely based on its conclusion that the defendant relied on case law that is not well-reasoned. *Id.* at *9-10. This Motion does not rely on that case law and instead focuses on the plain language and the legislative history of WESCA. WESCA's legislative history was not considered in *Vonbergen*.

because, to the extent the computer code is a device, it is merely a "tracking device" and not one that intercepts "electronic communications." WESCA prohibits the intentional interception, disclosure, or use of the contents of "any wire, electronic, or oral communication." 18 Pa.C.S.A. § 5703. The plain language definitions of "wire communication" and "oral communication" make clear that the website interactions allegedly captured by computer code cannot qualify as either of those communication types.[20] Thus, Plaintiff must show that these website interactions qualify as "electronic communications."

WESCA's definition of "electronic communication" expressly excludes "[a]ny communication from a tracking device[.]" 18 Pa.C.S.A. § 5702. A "tracking device," as defined by WESCA, is "[a]n electronic or mechanical device which permits only the tracking of the movement of a person or object." *Id.* As alleged, the computer code here is a tracking device under WESCA because the website interactions it allegedly collects "literally constitute a record of [Plaintiff's] movements within a digital space"—namely, the TD Bank website. *Cook*, 689 F.Supp. at 70. Plaintiff alleges that the computer code captures button clicks, webpage views, and search queries, all of which merely track Plaintiff's movement across the TD Bank website. *See Goldstein v. Costco Wholesale Corp*., 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) (finding that software that tracks website users' movements on a website falls "outside the purview" of Florida's analogue to the federal Wiretap Act because, similar to WESCA, this statute excludes "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object") (quoting Fla. Stat. § 934.02(12)(c)); *Jacome v. Spirit*

[20] 18 Pa.C.S.A. § 5702 (defining "wire communication" as "[a]ny aural transfer made in whole or in part through the use of facilities for the transmission of communication by wire, cable or other like connection between the point of origin and the point of reception, including the use of such a connection in a switching station, furnished or operated by a telephone, telegraph or radio company for hire as a communication common carrier"); *id.* (defining "oral communication" as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation").

*Airlines Inc., N*o. 2021-000947-CA-01, 2021 WL 3087860, at *3 (Fla.Cir.Ct. June 17, 2021) (dismissing claim under Florida's analogue to the federal Wiretap Act because, *inter alia*, software that "tracks a website browser's movements" is "definitionally excluded from the term 'electronic communications'"). As pled, even the search queries are merely a delivery mechanism that transports a website user from one page of the website to another page—much like pressing a particular button on the elevator of a department store takes a customer from one location where she may browse a particular subset of products to another location where she may browse a different subset of products.

Plaintiff's WESCA claim therefore separately fails because the Facebook Tracking Pixel qualifies as a tracking device, and any website interactions that the Facebook Tracking Pixel captures are not the electronic communications that WESCA protects.[21]

## IV. CONCLUSION

For the foregoing reasons, TD Bank respectfully requests that the Court dismiss Plaintiff's complaint with prejudice. Stripped of its hyperbolic language, descriptions of technologies unconnected to the at-issue conduct, and discussions of experiences that some *hypothetical* user who is not a named plaintiff in this case *might* have on the TD Bank website,

[21] Again, TD Bank acknowledges that *Vonbergen* declined to dismiss a WESCA claim based on the argument that session replay software—which captures a user's mouse movements and button clicks—amounts to a tracking device, but the Court should decline to adopt *Vonbergen*'s reasoning. In *Vonbergen*, the court declined to conclude as a matter of law that 'mouse clicks and movements, keystrokes, search terms, ... pages and content viewed by Plaintiff, scroll movements, and copy and paste actions' exclusively track an individual's movements" because "mouse clicks and movements could communicate preferences among presented options; keystrokes and search terms could communicate objects of the user's curiosity; [and] pages and content scrolled through could communicate the depth of a user's interest[.]" 2023 WL 8569004, at *11. This reasoning is flawed because any movement—even when it occurs in a non-digital space—can convey this same information. For example, the amount a time a person spends at a particular museum or the number of times a person travels to the campaign office of a certain political candidate could say something about the depth of the person's interests or the objects of the person's curiosity. WESCA defines a "tracking device," as "[a]n electronic or mechanical device which permits only the tracking of the movement of a person or object." 18 Pa.C.S.A. § 5702. This definition makes no distinction based on the information that could be conveyed by the movement.

the Complaint consists of nothing more than conclusory, bare-bones allegations that simply cannot adequately plead a claim for a violation WESCA.

Date: July 31, 2024

**DUANE MORRIS LLP**

/s/ *Michael S. Zullo*
Michael S. Zullo
J. Colin Knisely
Katherine R. Lynch
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196
MSZullo@duanemorris.com
CKnisely@duanemorris.com
KRLynch@duanemorris.com
Telephone: +1 215 979 1000
Fax: +1 215 979 1020

*Attorneys for Defendant TD Bank, N.A*