**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MONICA CARAFFA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TD BANK, N.A.,<br><br>Defendant. | Case No. 2:24-cv-02214-CMR |

**PLANTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE FULL-STRING URLS AND BUTTON CLICKS AT ISSUE ARE "CONTENTS" OF USER COMMUNICATIONS WITH DEFENDANT ..... 2

II. THE THIRD PARTIES' TRACKING TECHNOLOGIES ARE "DEVICES" UNDER WESCA ..... 11

III. THE THIRD PARTIES' TRACKING TECHNOLOGIES DO NOT FALL WITHIN WESCA'S "TRACKING DEVICE EXCEPTION" ..... 15

IV. PLAINTIFF SUFFICIENTLY PLEADS HER INTERACTIONS WITH TD'S WEBSITE CONVEYED THE "CONTENTS" OF COMMUNICATION ..... 19

V. PLAINTIFF SUFFICIENTLY PLEADS FACTS CONCERNING HER "NONPUBLIC PERSONAL INFORMATION," AS DEFINED BY THE GLBA ..... 23

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ........ 4

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 878100 (C.D. Cal. Feb. 29, 2024) ........ 23

*Bolger v. Utermohlen*,
485 F. Supp. 3d 588 (E.D. Pa. 2020) ........ 14

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) ........ 14

*Braun v. Philadelphia Inquirer*, LLC,
2023 WL 7544160 (E.D. Pa. Nov. 13, 2023) ........ 4

*Burns v. Heyns*,
2015 WL 4391983 (W.D. Mich. July 15, 2015) ........ 10

*Com. v. Bart*,
13 Pa. D. & C.4th 670 (Com. Pl. 1991) ........ 17

*Com., Dep't of Transp. v. Taylor*,
576 Pa. 622, 841 A.2d 108 (2004) ........ 18

*Commonwealth v. Glass*,
2018 PA Super 328, 200 A.3d 477 (2018) ........ 18

*Commonwealth v. Smith*,
136 A.3d 170 (Pa. Super. Ct. 2016) ........ 12

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ........ passim

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 23

*Davis v. Sulcowe*,
416 Pa. 138, 205 A.2d 89 (1964) ........ 14

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) ........ 23

*Doe v. Amgen, Inc.*,
2024 WL 575248 (C.D. Cal. Jan. 29, 2024) ........ 23

*Doe v. Davita Inc.*,
2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) ........ 22

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 3, 4, 8, 13

*Emmett v. Delta Air Lines, Inc.*,
2024 WL 2816502 (W.D. Pa. June 3, 2024) ........ 6, 12

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 (3d Cir. 2003) ........ 3

*Goldstein v. Costco Wholesale Corp.,*
559 F. Supp. 3d 1318 (S.D. Fla. 2021) ........ 8, 17, 18

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 8

*Hartley v. Urban Outfitters, Inc.*,
2024 WL 3445004 (E.D. Pa. July 17, 2024) ........ 10, 11, 22

*Hay Group, Inc. v. E.B.S. Acquisition Corp.*,
360 F.3d 404 (3d Cir. 2004) ........ 14

*Howard v. Lab'y Corp. of Am.*,
2024 WL 4250677 (M.D.N.C. Aug. 8, 2024) ........ 4

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) ........ 22

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 3

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ........ 3, 4, 21

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 6

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) ........ 8

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) .......... 21

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 3, 4, 8, 10

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) .......... 3, 8

*Jacome v. Spirit Airlines Inc.,*
2021 WL 3087860 (Fla. Cir. Ct. 2021) .......... 17, 18

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 4, 20

*Klumb v. Goan*,
884 F. Supp. 2d 644 (E.D. Ten. 2012) .......... 13

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) .......... 13

*Milner v. Dept. of Navy*,
562 U.S. 562, 131 S.Ct. 1259, 179 L.Ed.2d 268 (2011) .......... 14

*Murphy v. Thomas Jefferson University Hospitals, Inc.*,
2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) .......... 19, 20, 24

*Oliver v. Noom, Inc.*,
2023 WL 8600576 (W.D. Pa. Aug. 22, 2023) .......... 6, 12, 20

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019) .......... 11, 12, 14, 21

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 6, 9, 13

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) .......... 7, 11

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) .......... 23, 24

*Schnur v. JetBlue Airways Corp.*,
2024 WL 2816552 (W.D. Pa. June 3, 2024) .......... 6, 12

*Shefts v. Petrakis*,
2012 WL 4049484 (C.D. Ill. Sept. 13, 2012) .......... 13

*Smart v. Main Line Health*,
2024 WL 2943760 (E.D. Pa. June 10, 2024) ..... 24

*United States v. Barrington*,
648 F.3d 1178 (11th Cir. 2011) ..... 13

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ..... 10

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) ..... 13

*Vonbergen v. Liberty Mut. Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) ..... passim

*Walsh v. Krantz*,
386 F. App'x 334 (3d Cir. 2010) ..... 3

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ..... 13

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..... 10

**STATUTES**

1 Pa.C.S.A. § 1921(b) ..... 18

18 Pa. C.S. § 5701 ..... 1

18 Pa. C.S. § 5702 ..... passim

18 Pa. C.S. § 5703(1) ..... 3, 15

18 Pa.C.S. § 5761 ..... 16

18 Pa. C.S. § 5761(c) ..... 17

18 Pa. C.S. § 5761(g) ..... 17

18 U.S.C. § 2510 ..... 3

Cal. Penal Code § 630 ..... 3

Fla. Stat. § 934.02(12)(c) ..... 18

**REGULATIONS**

16 C.F.R. § 313.3 ..... Passim

## INTRODUCTION

Plaintiff Monica Caraffa ("Plaintiff") filed this action against Defendant TD Bank, N.A. ("Defendant" or "TD") for intentionally procuring several third parties[1] to intercept or endeavor to intercept the electronic communications sent and received by Plaintiff and Class Members on Defendant's website, td.com (the "Website"). First Amended Complaint (ECF No. 22) ("FAC") ¶¶ 1-2, 76-77. These include communications that contain sensitive and confidential information – i.e., "nonpublic personal information," as defined by 16 C.F.R. § 313.3 (the "Gramm-Leach-Biley Act" or "GLBA"). *Id.* ¶¶ 2, 15-22, 82. By failing to procure consent before enabling the Third Parties to intercept these communications, Defendant violated 18 Pa. Cons. Stat. § 5701, *et seq*. (the Pennsylvania Wiretapping and Electronic Surveillance Control Act or "WESCA"). *Id.* ¶ 2. Now, Defendant moves to dismiss. *See* Motion to Dismiss (ECF No. 27) ("MTD").

***First***, Defendant argues that "the alleged button clicks, page views, and search queries do not qualify as the 'contents' of a communication under WESCA." MTD at 1-2; *see also id.* at 15-17. But Defendant misstates the facts, ignores relevant case law, and is wrong.

***Second***, Defendant argues that "WESCA is inapplicable here because the computer codes at the heart of Plaintiff's complaint do not meet the definition of a 'device' as that term is used in WESCA." MTD at 2; *see also id.* at 18-21. But Defendant's argument has been roundly rejected by courts interpreting the WESCA.

***Third***, Defendant's assertion that the Third Parties' tracking technologies fall within WESCA's tracking device exception (MTD at 21-23) fails because (1) the communications at issue were not "from" Adobe's, Google's, and Meta's tracking technologies (instead they were

[1] Adobe Inc. ("Adobe"), Google LLC ("Google"), and Meta Platforms, Inc. ("Meta") (collectively, the "Third Parties").

"from" a Website user's browser (18 Pa. C.S. § 5702); (2) the communications at issue are not "the movement of a person or object" (*id.*); and (3) a tracking device "permits **only** the tracking of the movement of a person or object." *Id.* (emphasis added).

***Fourth***, Defendant argues Plaintiff "fails to allege any facts to establish the 'contents' of her communications, let alone that such 'contents' were intercepted, used, or disclosed[.]" MTD at 1; *see also id.* at 7-13. But the FAC clearly specifies the private communications collected by the Third Parties' tracking technologies.

***Fifth***, Defendant argues that Plaintiff "fails to allege any facts demonstrating how [her] interaction[s] with the TD Bank website resulted in the disclosure of ***her*** 'nonpublic personal information.'" MTD at 14; *see also id.* at 14-15. But Plaintiff provides detailed allegations about the collection of her "nonpublic personal information," as defined by 16 C.F.R. § 313.3 (the Gramm-Leach-Biley Act or "GLBA").

Thus, Defendant's Motion to Dismiss should be denied.

## ARGUMENT

### I. THE FULL-STRING URLS AND BUTTON CLICKS AT ISSUE ARE "CONTENTS" OF USER COMMUNICATIONS WITH DEFENDANT

Defendant contends that "Plaintiff's WESCA claim [] fails as a matter of law because the alleged interactions are not ***'contents'*** of a communication." MTD at 15 (emphasis in original). Per Defendant, the "full-string, detailed URLs disclosing Website users' individualized Website search terms and queries; and Website users' button clicks (conveying responses to questions and prompts, … [and] other selections)" (FAC ¶ 20) are merely "'routing' or 'record' information[.]" MTD at 15. Not so.

WESCA prohibits intentionally procuring any other person to intercept or endeavor to intercept (i.e., "acqui[re ] the contents of"[2]) a wire, electronic or oral communication. 18 Pa. C.S. § 5703(1). The term "contents" is broadly defined by the statute as "any information concerning the substance, purport, or meaning of [a] communication." 18 Pa. Cons. Stat. § 5702.

Concerning the full-string, detailed URLs at issue, the Third Circuit Court of Appeals has held that "URLs may be … [record] information, but only when they are performing such a function. If [a] … URL is instead part of the substantive information conveyed to the recipient, then by definition it is 'content.'" *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) ("while a URL that includes basic identification and address information is not content, a URL disclosing a search term or similar communication made by the user could constitute a communication[.]") (cleaned up); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605-606 (9th Cir. 2020) (finding defendant's "practices violated the Wiretap Act and CIPA[]" where "URLs in the instant case could emanate from search terms inputted into a third-party search engine. These terms and the resulting URLs could divulge a user's personal interests, queries, and habits[.]"); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108–09 (9th Cir. 2014) ("a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication").[3]

[2] *See* 18 Pa. Cons. Stat. § 5702 (defining "intercept").

[3] Note, these cases concern the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.,* WESCA, and/or other state wiretapping statutes (such as the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*). WESCA is analogous thereto. *See, e.g.*, *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 n.6 (3d Cir. 2003), as amended (Jan. 20, 2004) ("the Pennsylvania counterpart to ECPA Title 1, 18 Pa. Cons.Stat. § 5702, *et seq.*[,] … is interpreted in the same way as the ECPA[.]"); *Walsh v. Krantz*, 386 F. App'x 334, 340 (3d Cir. 2010) (citing *Fraser* for the same proposition); *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1355 n.4 (S.D. Cal. 2024) (noting

The above holdings are consistent with those in WESCA cases involving URLs and searches. *See, e.g.*, *Braun v. Philadelphia Inquirer*, LLC, 2023 WL 7544160, at *5 (E.D. Pa. Nov. 13, 2023) ("[defendant's] argument to the effect that URLs are not substantive content of a communication … fails to persuade[.]") (citing *In re Google*, 806 F.3d 125); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *5 (N.D. Ill. Sept. 9, 2024) ("the URLs at issue include terms entered into search fields and fillable forms. … This is sufficient to plausibly allege that covered 'content' was intercepted.") (citing, *inter alia*, *Doe v. Meta*, 690 F. Supp. 3d at 1076-1077); *Howard v. Lab'y Corp. of Am.*, 2024 WL 4250677, at *8-9 (M.D.N.C. Aug. 8, 2024), report and recommendation adopted, 2024 WL 4326898 (M.D.N.C. Sept. 27, 2024) ("[W]hether [p]laintiffs are ultimately able to prove that [] contents … were [intercepted,] … they have adequately alleged so. … Plaintiffs here allege that they accessed the Labcorp website at the time that the tracking tools were deployed and entered search terms regarding their sensitive medical issues—some of which are given as examples[.]"); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023), motion to certify appeal denied, 2024 WL 664811 (N.D. Cal. Feb. 16, 2024) (analyzing allegations "that [the defendant] intercepted, e.g., information about the webpages [the plaintiffs] viewed and searches they conducted" and finding "[t]his makes it unlikely that [p]laintiffs are simply implicating record information – *i.e.*, information regarding the characteristics of a message as opposed to the substance of the message itself.") (citing *Zynga*, 750 F.3d at 1108-09).

Here, Plaintiff alleges that Adobe Inc. (Adobe), Google LLC (Google), and Meta Platforms, Inc. (Meta) (the Third Parties) intercept content – namely, "full-string, detailed URLs

---

"[t]he federal and state wiretap laws are treated as largely analogous[,]" and collecting WESCA and CIPA case law underscoring this).

disclosing Website users' individualized Website search terms and queries[.]" FAC ¶ 20. The FAC delineates how these "confidential communications are the product of Website users affirmatively entering and interacting with information on the Website (that is to say, the confidential communications are not procedurally or automatically generated)." *Id.* And the FAC makes clear that the confidential communications at issue include "information that consumers provided to TD to obtain financial products or services from TD; information about consumers resulting from transactions involving a financial product or service between TD and consumers; and information that TD otherwise obtained about consumers in connection with providing financial products or services to consumers." *Id.* ¶ 21 (citing 16 C.F.R. § 313.3(o)(1)). The FAC even includes numerous examples (along with thorough explanations) of full-string, detailed URLs disclosing individualized search terms and queries, which were intercepted by the Third Parties. *Id.* ¶¶ 32-33 (such URLs intercepted by Adobe), ¶¶ 37-38 (Google), ¶¶ 41-42 (Meta). An example of the type of information intercepted is below:

```
pageName: /www.td.com/us/en/personal-banking/search
g: https://www.td.com/us/en/personal-banking/search?query=what%20is%20my%20fee%20schedule%20as%20a%20pennsylvania%20resident?&source=1
r: https://www.td.com/us/en/personal-banking
cc: USD
ch: us-en
server: www.td.com
events: event1,event19
aamb: RKhpRz8krg2tLO6pguXWp5olkAcUniQYPHaMWWgdJ3xzPWQmdj0y
v1: D=pageName
c2: What is my fee schedule as a Pennsylvania resident?
```

*Id.* ¶ 32. "As shown by the red highlights in above excerpt of the Website's transmissions, Adobe intercepted the full-string, detailed URL: 'https://www.td.com/us/en/personal-banking/search?query=what%20is%20my%20fee%20schedule%20as%20a%20pennsylvania%20resident?&source=1' which includes the search terms/query: 'What is my fee schedule as a Pennsylvania resident?'" *Id.* ¶ 33.

Courts have also held that a wide range of user interactions like button clicks are content, under the WESCA. *See, e.g.*, *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 456–57 (E.D. Pa. 2023) (Pratter, J.) (defendant "intercepted, among other things, what [the plaintiff] searched for on [the defendant's] website[,]" as well as "mouse clicks and movements, ... information and PII inputted[,] … [and] pages and content viewed[.]" Considering this, Judge Pratter "decline[d] to find that [plaintiff's] 'browsing activities' lack[ed] 'contents' sufficient to make out a claim at [the] early [(12(b)(6))] juncture."); *Oliver v. Noom, Inc.*, 2023 WL 8600576, at *7 (W.D. Pa. Aug. 22, 2023) ("[Plaintiff] claims that [defendant], through the Session Replay Code on its website, collected personal information she input as part of [defendant's] 10-minute online quiz, including her height, weight, gender, age, reason for wanting to lose weight, how active she is, how often she eats, and whether she is at risk for specific health issues. … At this stage, these allegations are sufficient to establish that [defendant] intercepted 'contents' of [p]laintiffs' communications."); *Schnur v. JetBlue Airways Corp.*, 2024 WL 2816552, at *8 (W.D. Pa. June 3, 2024) (Defendant's argument "that mouse clicks and movements, keystrokes, search terms, information inputted by [p]laintiff, and pages and content viewed by [p]laintiff … would not be considered contents … fails[.]") (cleaned up); *Emmett v. Delta Air Lines, Inc.*, 2024 WL 2816502, at *8–9 (W.D. Pa. June 3, 2024) (largely same).[4]

Again, Plaintiff makes clear that the Third Parties intercept content – namely, "Website users' button clicks (conveying responses to questions and prompts, conveying Website users' respective desires that the Website would supply them with certain information and/or responses,

[4] This is to say nothing of harmonious case law regarding the Federal Wiretap Act and/or CIPA. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022) ("the names of buttons clicked on websites and their associated URLs are … 'contents' within the meaning of the statute."); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("[Plaintiff] requested information from [the defendant] by clicking on items of interest; [defendant] responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication.").

and conveying other selections)." FAC ¶ 20. Plaintiff explains the "nonpublic personal information" conveyed by said button clicks. *Id.* ¶ 21. And the FAC includes numerous examples (along with thorough explanations) of button clicks that were intercepted by the Third Parties. *See id.* ¶¶ 34-35 (button clicks intercepted by Adobe), ¶¶ 39-40 (Google), ¶¶ 43-44 (Meta). An example of the type of information intercepted is below:


```
cd3: 2113413797.1723747911
cd10: 139
cd12: aam=8668639,test,8668383
cd22: us-en
cd30: www.td.com
cd31: 1.15.51
cd32:
cd33: Home Lending
cd35:
cd38: Personal
cd40: appointment start
cd62: 2024-08-15T14:53:31.545-04:00
```


*Id.* ¶ 39. "As shown by the purple highlights in the above excerpt of the Website's transmissions, Google intercepted button clicks on 'Personal' (as in appointment type) and 'Home Lending' (as in what 'I want to talk about')." *Id.* ¶ 40.

Thus, Defendant's point that "form-field information associated with a user's identity is not the **'*contents*'** of a communication[]" (MTD at 17) (emphasis in original) is wholly inapposite. The button clicks at issue were not just about users' identities (i.e., name or account number); they were confidential communications from consumers to TD, made to obtain financial products or services; resulting from transactions; and/or arising in connection with the provision of financial products or services. FAC ¶ 21.

Besides misstating the facts, Defendant also misstates the law. Record information is typically data generated automatically and **can** include information about who is making the communication, such as name, address, and subscriber number. *See, e.g.*, *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *6 (N.D. Cal. May 15, 2019). Nonetheless, information about website

users is not **always** record information. Rather, as per even Defendant's own authority, "record information can become content if the record is the subject of a communication[.]" *Zynga*, 750 F.3d at 1107 (quoting *In re Pharmatrak, Inc.*, 329 F.3d 9, 18-19 (1st Cir. 2003)); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092-1093 (N.D. Cal. 2022) ("customer information such as a person's name, address, and subscriber number or identity is record information, but it may be contents when it is part of the substance of the message conveyed to the recipient."); *Doe v. Meta*, 690 F. Supp. 3d at 1076-77 ("contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication.") (internal citations omitted); *India Price*, 712 F. Supp. 3d 1347, at 1361 ("Just as in *Pharmatrak*, … [t]he Court finds that Plaintiffs have alleged the capture of personally identifiable information that is the subject of the communication, and thus Plaintiffs have sufficiently alleged the interception of 'contents.'").

Defendant's reliance on *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 70–72 (W.D. Pa. 2023) and *Goldstein v. Costco Wholesale Corp.,* 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) for the proposition that all that was intercepted was "the cyber analog to record information … obtained through a security camera at a brick-and-mortar store" (MTD at 16) (cleaned up) is misplaced. First, Judge Pratter expressly rejected the reasoning of *Goldstein* (as well as that of another out-of-circuit case cited by Defendant, *Zynga*, 750 F.3d at 1102-08) in *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 456–57 (E.D. Pa. 2023). There, "[t]he Court recognize[d] that [the *Zynga* and *Goldstein*] courts … dismissed wiretapping claims based on the interception of digital matter[,]" but the Court made clear that it "cannot conclude as a matter of law that intercepting the object of [a ] search through [] browsing activity is necessarily the same as intercepting a patron's movements through a brick-and-mortar store while they search for

some undisclosed object." *Id.* This aligns closely with the holding of *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019):

> [Plaintiff's] interaction with the [defendant's] website is communication within the meaning of [CIPA] section 631. Admittedly, a customer in brick-and-mortar store does not communicate by searching through the inventory. But the same is not true for off-site shoppers: a customer who calls to inquire about a store's products undoubtedly communicates with the retailer. As does an online patron. [The plaintiff] requested information from [defendant] by clicking on items of interest; [the defendant] responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication.

*Vonbergen* and *Revitch* make sense and are representative of the intercepted information here at issue. Plaintiff and other Class Members are not at all like a "customer [who] isn't intending to communicate anything to anyone by walking around [a] store[,] … [such that t]he observer must guess at what, if anything, those movements mean." *Cook*, 689 F. Supp. 3d at 70. That is, Website users were not mere window shoppers, silently browsing and going about the Website, devoid of any intent to have an **exchange** of information with Defendant. Rather, they purposefully made "a substantive communication like a verbal conversation or text message." *Id.* Indeed, Website users engaged in a give and take – a conversation, online – with Defendant (akin to a conversation one might have with a TD employee, like a bank teller). Website users asked things like: "'What is my fee schedule as a Pennsylvania resident?'" (FAC ¶¶ 32-33, 37-38) through text search terms/queries and/or other "information that [was] affirmatively entered … on the Website." *Id.* ¶ 51. They shared things like: "'26-59' (as in age); 'borrowing' (as in financial goals); 'futureuse' (as in need for access to funds); and 'no' (as in current homeownership status)" (*id.* ¶¶ 32-33, 37-38) through button clicks that "convey[ed] responses to questions and prompts, convey[ed] Website users' respective desires that the Website would supply them with certain information and/or responses, and convey[ed] other selections[.]" *Id.* ¶

20. Put succinctly, users engaged substantively with Defendant via its Website – i.e., in hopes (and expecting) that Defendant would, in turn, respond.

Defendant's other case law – *Zynga,* 750 F.3d at 1107; *Yoon v. Lululemon USA, Inc*., 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021); *Burns v. Heyns*, 2015 WL 4391983, at *18 (W.D. Mich. July 15, 2015); and *Hartley v. Urban Outfitters, Inc.*, 2024 WL 3445004, at *6 (E.D. Pa. July 17, 2024) – also fails to persuade. MTD at 16.

In *Zynga*, the URLs "at issue [] include[d] only basic identification and address information, not a search term or similar communication made by the user[.]" *Zynga*, 750 F.3d at 1109. In its analysis, the Ninth Circuit contrasted this information with "a Google search URL [that] not only shows that a user is using the Google search engine, but also shows the specific search terms the user had communicated to Google." *Id.* at 1108 (citing *United States v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2008)). Here, as discussed above, the communications are more like a "Google search URL[.]"

*Yoon*, 549 F. Supp. 3d at 1082, held that CIPA protects "user-generated material of a message, not routine identifiers[.]" Here, the intercepted pieces of information were not routine identifiers. Instead, "Website users' confidential communications are the product of Website users affirmatively entering and interacting with information on the Website (that is to say, the confidential communications are not procedurally or automatically generated)." FAC ¶ 20.

In *Burns v. Heyns*, the "clickstream data, … showing the time, order and duration the computer spent on each web page as well as which files were accessed and/or downloaded" (*Burns*, 2015 WL 4391983, at *18) (cleaned up) was plainly "[r]ecord information … generated automatically at the sending of [a] message and [] incidental to the use of [a] communication

device." *Hytto*, 2019 WL 8333519, at *6. Here, the "content [was] generated not automatically, but through the intent of the user." *Id.*

Finally, *Hartley*, 2024 WL 3445004, at *6 is irrelevant. It does not so much as broach the issue of what constitutes "contents" under the WESCA.

Should the Court disagree, Plaintiff notes that "courts in the Third Circuit have [] declined to dismiss analogous wiretapping claims at this early juncture." *Vonbergen*, 705 F. Supp. 3d at 457 (collecting cases). If "[t]he Court [would] be better equipped to [evaluate the issue of 'content'] after a record is developed[,]" then Defendant "is free to raise these arguments again … as a motion for summary judgment[.]" *Id.* (cleaned up).

## II. THE THIRD PARTIES' TRACKING TECHNOLOGIES ARE "DEVICES" UNDER WESCA

Defendant contends "Plaintiff's claim for a WESCA violation separately fails because the intangible software that is alleged to be responsible for the 'interception' is not a 'device' as that term is defined by WESCA." MTD at 18. Defendant is wrong. The WESCA defines "intercept" as the "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa. Stat. § 5702. "Electronic, mechanical or other device" is defined as "[a]ny device or apparatus … that can be used to intercept a wire, electronic or oral communication." *Id.*

As Pennsylvania courts have recognized, "[t]he use of the word 'any' before the phrase 'device or apparatus' in Section 5702 implies that the class of technology contemplated by WESCA is broad" and "[e]xceptions to WESCA's definition of 'devices' must be construed narrowly." *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 117 (W.D. Pa. 2019); *see also Vonbergen*, 705 F. Supp. 3d at 455 ("The word 'any' clearly indicates an inclusive understanding of whatever follows. … '[A]ny' in front of 'device or apparatus' indicates the

reference to devices or apparatuses is 'without distinction or limitation[.]'") (citing *Popa*, 426 F. Supp. 3d at 117); *Oliver*, 2023 WL 8600576, at *6 ("The use of the word 'any' … indicates that the class of technology contemplated by WESCA is broad.").

Thus, Defendant's argument has been roundly rejected by courts interpreting the WESCA. *See, e.g.*, *Popa*, 426 F. Supp. 3d at 116 ("Defendants argue that HCG's servers and Navistone's code are not 'devices,' and therefore their conduct does not fall within the sweep of WESCA. … To the extent that this issue will be raised again, the Court believes that it warrants deeper factual exploration than was available at the motion to dismiss stage."); *Vonbergen*, 705 F. Supp. 3d at 455 ("[Defendant] invites the Court to find that software, including session replay software, cannot constitute a 'device' under the Pennsylvania Wiretap Act as a matter of law. The Court declines the invitation."); *Oliver*, 2023 WL 8600576, at *6 ("The[] allegations—accepted as true and viewed in the light most favorable to the Plaintiffs—are sufficient to establish that the Session Replay Code on Noom's website falls within WESCA's broad definition of 'device.' As pled, the Session Replay Code used by Noom could reasonably be considered 'a device or apparatus' that can be used to intercept a transfer of data."); *Emmett*, 2024 WL 2816502, at *9 ("Defendant posits that there was no interception because the Session Replay Code is not an intercepting 'device' under the meaning of the PWA. … The Court does not accept this argument on multiple levels."); *Schnur*, 2024 WL 2816552, at *8 ("[T]he Court finds that the Session Replay Code, or Defendant's remote hardware that operates the Session Replay Code, is a device that intercepts under the meaning of the PWA."); *Commonwealth v. Smith*, 136 A.3d 170, 178 (Pa. Super. Ct. 2016) (finding smartphone "voice memo" software to constitute a "device" under the WESCA).

Indeed, in the context of other wiretapping laws (federal and state), "[t]he majority of courts to consider this issue have entertained the notion that software may be considered a device[.]" *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *see also Revitch*, 2019 WL 5485330, at *3 (under CIPA, finding "NaviStone's code is a device … primarily or exclusively designed or intended for eavesdropping upon the communication of another.") (cleaned up); *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016) (holding plaintiff plausibly alleged that computer software was "a device … primarily useful for [] the surreptitious interception of [] electronic communications" under federal Wiretap Act) (cleaned up); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) ("Plaintiffs have sufficiently alleged that the Carrier IQ Software is a 'device' for purposes of the Wiretap Act."); *Doe v. Meta*, 690 F. Supp. 3d at 1080 ("I agree that the Pixel software is a device under [CIPA] section 632(a)."); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 975 (N.D. Cal. 2023) (accepting that software could be a "device"); *Klumb v. Goan*, 884 F. Supp. 2d 644, 661-62 (E.D. Ten. 2012) (analyzing spyware software as a device); *Shefts v. Petrakis*, 2012 WL 4049484, at *8-9 (C.D. Ill. Sept. 13, 2012) (analyzing software as a device); *United States v. Barrington*, 648 F.3d 1178, 1203 (11th Cir. 2011) (addressing software that records keystrokes).

Here, Plaintiff alleges that the Third Parties acquired the contents of her electronic communications with Defendant through the use of an "electronic … or other device[.]" 18 Pa. Stat. § 5702. The FAC explains how "Adobe wiretaps the Website with trackers associated with the 'Adobe Experience Cloud[,]'" (FAC ¶ 24); "Google wiretaps the Website with trackers associated with 'Google Analytics[,]'" (*id.* ¶ 29); and "Meta wiretaps the Website with one of the 'Meta Business Tools' called the 'Meta Tracking Pixel.'" *Id.* ¶ 30. Plaintiff provides detailed allegations regarding what each of these technologies is (*id.* ¶¶ 24-31), as well as how the

tracking technologies intercept communications. *Id.* ¶¶ 32-44. This is sufficient under WESCA to allege the Third Parties' tracking technologies were each a "device" or "apparatus." At minimum, the FAC presents a question of fact that cannot be decided at this early stage. *See, e.g.*, *Popa*, 426 F. Supp. 3d at 117 (issue of whether the defendant's code qualifies as a "device" or "apparatus" under the WESCA is a "fact intensive inquiry" requiring discovery).

Defendant's convoluted analysis of the WESCA's legislative history (MTD at 19-21) is unpersuasive. First, "[a] court should not resort to legislative history where a statute's language is clear." *Bolger v. Utermohlen*, 485 F. Supp. 3d 588, 593 (E.D. Pa. 2020) (citing *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 406 (3d Cir. 2004)). And "legislative history is 'meant to clear up ambiguity, not create it.'" *Id.* (citing *Milner v. Dept. of Navy*, 562 U.S. 562, 574, 131 S. Ct. 1259, 179 L. Ed.2d 268 (2011); *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 673, 140 S. Ct. 1731, 1749, 207 L. Ed. 2d 218 (2020)). As discussed above, courts have found WESCA's "electronic, mechanical or other device" definition (18 Pa. Stat. § 5702) to be clear and unambiguous. Second, Defendant would have the Court look not to the text of the statute, but to the General Assembly's silence – how "the definition of 'electronic, mechanical, or other device' remained unchanged" (MTD at 19) and the General Assembly made "[t]he decision not to alter th[at] language[.]" *Id.* at 20. But it is a well-established proposition that "[t]he intention and meaning of the Legislature must primarily be determined from the language of the statute itself, and not from conjectures aliunde. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." *Davis v. Sulcowe*, 416 Pa. 138, 143, 205 A.2d 89, 91 (1964) (cleaned up). Thus, the Court ought not to pay any heed to Defendant's conjecture.

## III. THE THIRD PARTIES' TRACKING TECHNOLOGIES DO NOT FALL WITHIN WESCA'S "TRACKING DEVICE EXCEPTION"

Defendant argues that "Plaintiff's WESCA claim [] still fail[s] as a matter of law because, to the extent the code is a device, it is merely a 'tracking device[.]'" MTD at 21. This is wrong. To reiterate, the WESCA prohibits intentionally procuring any other person to intercept or endeavor to intercept a wire, electronic or oral communication. 18 Pa. C.S. § 5703(1). Per 18 Pa. C.S. § 5702, "[e]lectronic communication" does not include "[a]ny communication from a tracking device[,]" which is "[a]n electronic or mechanical device which permits only the tracking of the movement of a person or object."

Defendant's argument falls apart, *ab initio*, because it either grossly misapprehends or intentionally misstates Plaintiff's allegations. In short, Defendant seems argue that this is a case about the interception of "communication from a tracking device" – i.e., Adobe's, Google's, and Meta's tracking technologies. It is not. As articulated by the FAC:

> [T]he Adobe, Google, and Meta tracking technologies send secret instructions to a Website user's browser, without alerting the individual that this is happening. The trackers then cause the browser to secretly and simultaneously duplicate the user's Website communications, transmitting these communications to the Third Parties' servers alongside additional information about the Website user's identity. This entire process occurs within milliseconds. In other words, when a user communicates with Defendant's Website, those communications are simultaneously and contemporaneously duplicated and sent to the Third Parties at the same time as they are being sent to Defendant. Thus, the Third Parties' interception of these communications occurs in transit and in real time.

FAC ¶ 31. In other words, Plaintiff's allegations concern the interception of communications not from Adobe's, Google's, and Meta's tracking technologies, but from "a Website user's browser[.]" *Id.* This is not a case about the interception of communications from the Third Parties or their tracking technologies; it is a case about the interception of "communications between Website users and TD." *Id.* ¶ 19.

The Court's inquiry ought to end here. But in any event, it is clear that none of the Third Parties' tracking technologies could even possibly fit under the WESCA's definition of a "tracking device." First, the communications at issue are not "the movement of a person or object[.]" 18 Pa. C.S. § 5702. Judge Pratter rejected this argument in *Vonbergen*:

> According to Liberty Mutual, because Ms. Vonbergen's "browsing activities" "relate solely to [her] virtual online movement," they constitute a mere "tracking device" and not communications.
>
> The Court finds that the plain language of the Pennsylvania statute does not bear this restrictive interpretation. Specifically, the definition of a "tracking device" is expressly limited to devices that permit "*only* the tracking of the movement of a person or object." 18 Pa. Cons. Stat. § 5702 (emphasis added). The Court cannot conclude as a matter of law that "mouse clicks and movements, keystrokes, search terms, ... pages and content viewed by Plaintiff, scroll movements, and copy and paste actions" exclusively track an individual's movements. For example, mouse clicks and movements could communicate preferences among presented options; keystrokes and search terms could communicate objects of the user's curiosity; pages and content scrolled through could communicate the depth of a user's interest; and copy and paste actions could communicate substantive information about a user's life or their browsing history on other websites.

*Vonbergen*, 705 F. Supp. 3d at 457–58. In fact, "the movement of a person or object" (18 Pa. C.S. § 5702) is so narrow that a radar device does not even fall under the "tracking device" exception:

> [D]efendant argues that the use of radar in this case violated section 5761 of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §5761.
>
> …
>
> Section 5761 of the Wiretapping and Electronic Surveillance Control Act is addressed specifically to "Mobile Tracking Devices." 18 Pa.C.S. §5761. Subsection (c) requires a written application for the use of a mobile tracking device, and an order by the court of common pleas authorizing its use, before such device may lawfully be installed or used. Defendant argues that the radar device used in the instant case is such a mobile tracking device, and that its use by the state police without prior court approval violated the Act. The language of the Act makes it clear, however, that a radar device

> such as that used in the instant case is not a mobile tracking device within the realm of the statute.
>
> Section 5702 defines "tracking device" as an "electronic or mechanical device which permits only the tracking of the movement of a person or object," 18 Pa.C.S. §5702. Section 5761(c)(2) requires that the written application "identify the vehicles, containers or items to which, in which or on which the mobile tracking device shall be attached or be placed, and the names of the owners or possessors of the vehicles, containers or items." 18 Pa.C.S. § 5761(c)(2). Section 5761(g) provides that "[m]ovement of the tracking device within an area protected by a reasonable expectation of privacy shall not be monitored absent [certain conditions]." 18 Pa.C.S. §5761(g). Clearly, considering this language, the legislature did not intend that the statute apply to the use of radar to measure the speed of vehicles travelling on the highway.

*Com. v. Bart*, 13 Pa. D. & C.4th 670, 671–72 (Com. Pl. 1991).

It is telling that, to receive "[a]n order authorizing the use of one or more mobile tracking devices[,]" (18 Pa. C.S. § 5761(c)), it is necessary to submit an affidavit that "identif[ies] the vehicles, containers or items to which, in which or on which the mobile tracking device shall be attached or be placed[.]" 18 Pa. C.S. § 5761(c)(2). Of course, the Third Parties' tracking technologies were not "attached or placed" on a "vehicle[], container[] or item[.]" *Id.* This confirms that a "tracking device" under 18 Pa. C.S. § 5702 is consistent with a GPS placed on a car, not the Third Parties' Internet tracking technologies.

Grasping at straws, Defendant relies again on *Cook* and *Goldstein*, in addition to *Jacome v. Spirit Airlines Inc.,* 2021 WL 3087860 (Fla. Cir. Ct. 2021). These cases do not help. *Cook* does not discuss the "tracking device" exception at all and, as stated *supra*, it is factually distinct from the instant matter (there, with shoppers silently browsing and moving about the website, devoid of any intent to have an exchange of information with the defendant). *Cook* also went on to analyze URLs, which the *Cook* court reasoned could amount to content (i.e., not movement). *Id.* at 71. Both *Goldstein*, 559 F. Supp. 3d at 1321 and *Jacome,* 2021 WL 3087860, at *3

interpret the Florida wiretapping statute (the Florida Security of Communications Act or "FSCA"), whose tracking device exception is materially different from the WESCA's. Judge Pratter discussed this in *Vonbergen*, 705 F. Supp. 3d at 458:

> Liberty Mutual's reliance on Florida cases interpreting Florida's anti-wiretapping statute, which excludes the word "only" in its coordinate "tracking device" provision, is misplaced. Mot. to Dismiss (Doc. No. 23), at 18 (citing *Jacome*, 2021 WL 3087860, at *3; *Goldstein*, 559 F. Supp. 3d at 1321); Fla. Stat. § 934.02(12)(c) (excluding "[a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object" from Florida's definition of "electronic communication"). The Court therefore declines to find as a matter of law at this early juncture that Ms. Vonbergen's "browsing activities" fall under the "tracking device" exception to the category of "electronic communications" under the Pennsylvania Wiretap Act.

To summarize, under the WESCA, "[e]lectronic communication" does not include "[a]ny communication from a tracking device[,]" which is "[a]n electronic or mechanical device **which permits <u>only</u> the tracking of the movement of a person or object**." 18 Pa. C.S. § 5702 (emphasis added). Under the FSCA, "[e]lectronic communication" does not include "[a]ny communication from an electronic or mechanical device **which permits the tracking of the movement of a person or an object**[.]" Fla. Stat. § 934.02(12)(c). WESCA's tracking device exception is clearly narrower. *See, e.g.*, *Commonwealth v. Glass*, 2018 PA Super 328, 200 A.3d 477, 486–87 (2018) ("Detectives[] use[d ] a covert audio recording device that included a GPS location tracker[, called a Sur-Tec device.] …[T]he Sur-Tec device is not a 'tracking device,' pursuant to Section 5702, because it did not 'only' track 'the movement of a person or object. … We cannot disregard the legislature's use of the term 'only,' in defining a "tracking device.'") (citing 18 Pa.C.S.A. § 5702; 1 Pa.C.S.A. § 1921(b); *Com., Dep't of Transp. v. Taylor*, 576 Pa. 622, 627, 841 A.2d 108, 111 (2004)).

Of course, neither computer code (like the Third Parties' tracking technologies) nor a Website user's Internet browser permits **only** the tracking of the movement of a person or

object." 18 Pa. C.S. § 5702 (emphasis added). Computer code and Internet browsers have innumerable productive, recreational, and creative functions.

Therefore, the tracking device exception does not apply because (1) the communications at issue were not "from" Adobe's, Google's, and Meta's tracking technologies (instead they were "from" a Website user's browser (18 Pa. C.S. § 5702); (2) the communications at issue are not "the movement of a person or object" (*id.*); and (3) a tracking device "permits **only** the tracking of the movement of a person or object." *Id.* (emphasis added).

## IV. PLAINTIFF SUFFICIENTLY PLEADS HER INTERACTIONS WITH TD'S WEBSITE CONVEYED THE "CONTENTS" OF COMMUNICATION

Per Defendant, Plaintiff's allegations fall "woefully short" because "she has not added any allegations concerning her alleged 'communication,' let alone the 'contents' of the communication." MTD at 8 (cleaned up). This is wrong.

Defendant cites *Murphy v. Thomas Jefferson University Hospitals, Inc.*, 2023 WL 7017734 (E.D. Pa. Oct. 10, 2023) for the proposition that, when communications are "generally described[,]" that is insufficient to state a wiretapping claim. MTD at 9-10 (cleaned up). There, the plaintiffs claimed to "communicate[] directly with doctors and medical staff" (*Murphy*, 2023 WL 7017734 at *3) and that the Meta Pixel "collect[ed] information about what users do on the website" (*id.* at *1) (cleaned up). This conflicted with the defendant's contention that there was "no feature for any direct communications on the website with a … doctor, nurse or any other medical staff." *Id.* at *3 (cleaned up).

Here, on the other hand, the FAC contains far more detail as to "what users do [to communicate] on the [W]ebsite[.]" *Id.* at *1. *See, e.g.*, FAC ¶ 20 ("full-string, detailed URLs disclosing Website users' individualized Website search terms and queries; and Website users' button clicks []conveying responses to questions and prompts, conveying Website users'

respective desires that the Website would supply them with certain information and/or responses, and conveying other selections[.]"). Plaintiff also explains how her own communication "activity [was] received from the Website[]" (*id.* ¶ 6) – i.e., "[v]iewing content[;] [s]earching for an item[;] [a]dding an item to a shopping cart[;] [and m]aking a purchase[,]" as detailed by the cite to Meta's website. *Id.* ¶ 6 n.1. Further, Defendant does not and cannot dispute that there was a "feature for [] direct communications on the [W]ebsite with [TD.]" *Murphy*, 2023 WL 7017734 at *3. *See, e.g.*, FAC ¶¶ 20-22, 32-44.

Plaintiff is not required to plead with any more specificity concerning her Website communications. "[C]ourts have rejected" the position that "[p]laintiffs must plead the exact communications they had with the [d]efendant]" under WESCA. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023); *see also Oliver v. Noom,* 2023 WL 8600576, at *7 (allegations that "[defendant's] Session Replay Code 'records all website visitor actions[,]' which **necessarily includes** all of the information [plaintiff] input when taking Noom's quiz[,]" were "sufficient to establish that [defendant] intercepted 'contents' of [p]laintiffs' communications[.]") (emphasis added) (citations omitted).

Still, Defendant cites *Cook v. GameStop*, 689 F. Supp. 3d 58 (W.D. Pa. 2023), arguing that Plaintiff failed to provide "critical facts" about the precise **contents** of her communications, such as: "'What did she click? Which keystrokes did she enter? What kind of webpages did she visit?'" MTD at 8-9 (quoting *id.* at 69). But the FAC is not deficient. It explains the "contents" of Plaintiff's Website communications. *See, e.g.*, FAC ¶ 6 ("Plaintiff accessed and navigated the website to browse and engage with TD's financial products and services. Each of these communications was intercepted in transit by the Third Parties—as enabled by Defendant—including communications that contained Plaintiff Caraffa's confidential, 'nonpublic personal

information' as defined by the Gramm-Leach-Biley Act."), ¶¶ 16-17 (defining "nonpublic personal information" under the GLBA); *see also id.* ¶¶ 2, 7, 19, 69, 76. The FAC also precisely identifies contents intercepted on Defendant's Website. *Compare* FAC ¶¶ 20-22, 32-44 *with Cook*, 689 F. Supp. 3d at 71-72 ("Ms. Cook's rebuttal … [is that e]verything about what happens in your interaction with the website is communicative in nature.") (cleaned up).

These allegations are sufficient at the 12(b)(6) stage. *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d at 119 ("the Court is not disposed to rule on whether any of it constituted 'content' under WESCA as a matter of law at this juncture. The Court will be better equipped to do so after a record is developed that places the alleged conduct of Defendants into context vis-à-vis the nature of 'content' for a claim under WESCA."); *In re Google*, 806 F.3d at 139 ("Because the complaint pleads a broad scheme in which the defendants generally acquired and tracked the plaintiffs' internet usage, we are satisfied that this scheme, if it operated as alleged, involved the collection of at least some 'content[.]'"). These holdings are grounded in common sense. There is a "'chicken and the egg' problem that frequently arises in data-privacy cases, in which plaintiffs often lack knowledge of when or how their data is being used[,]" given the "informational asymmetry[]" between plaintiffs and defendants. *In re TikTok, Inc. In-App Browser Priv. Litig.*, 2024 WL 4367849, at *5 (N.D. Ill. Oct. 1, 2024).

Defendant fails to recognize this. Defendant also baselessly argues that Plaintiff relies on "bare bones allegations of the capabilities of the [Third Parties'] software[]"and that the FAC is thus "inadequate." MTD at 8. On this point, the MTD (at 9) again refers to *Cook*, summarizing how "[t]he [*Cook*] court [] reasoned that [] generic allegations about how at-issue technology works 'in general' are problematic when they are unaccompanied by 'any specific allegations about whether [***defendant's***] code operated in the manner described.'" (Emphasis in original)

(cleaned up). Likewise, Defendant cites to the Court's reasoning in *Hartley v. Urban Outfitters, Inc.*, 2024 WL 3445004, at *7: "allegations of what a technology is merely capable of collecting do not equate to sufficient allegations of what that technology actually collected." (citing *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 356 (E.D. Pa. 2023)).

But the FAC's allegations are unquestionably more robust than those in *Cook* (*see supra*), *Hartley*, 2024 WL 3445004, at *7 (with "allegations that the spy pixels are *designed* to extract IP addresses and location data") (emphasis added) and *BPS*, 705 F. Supp. 3d at 356 (with allegations that "researchers have found that a variety of highly sensitive information *can* be captured in event responses from website visitors.") (Emphasis in original) (cleaned up). It is true, as Defendant notes, that Plaintiff "allocates four and a half pages to … describe[] the[ Third Parties' tracking technologies.]" MTD at 4. *See, e.g.*, FAC ¶¶ 23-31. This, as in *Hartley* and *BPS*, provides valuable background information about what the Third Parties' tracking technologies are and how they work. The FAC does not stop there, though. It then includes numerous examples (along with thorough explanations) of **actual** full-string, detailed URLs disclosing individualized search terms and queries, which were intercepted by the Third Parties. *Id.* ¶¶ 32-33 (such URLs intercepted by Adobe), ¶¶ 37-38 (Google), ¶¶ 41-42 (Meta). And the FAC includes numerous examples (along with thorough explanations) of **actual** button clicks that were intercepted by the Third Parties. *See id.* ¶¶ 34-35 (button clicks intercepted by Adobe), ¶¶ 39-40 (Google), ¶¶ 43-44 (Meta). Thus, Plaintiff has clearly put Defendant on "notice of its alleged misconduct[.]" MTD at 10 (cleaned up).

The out-of-circuit cases cited by Defendant (MTD at 12-13) are inapposite.

Four of Defendant's cases center around pleadings that, unlike those here at issue (*see supra*), were factually unfounded and logically untenable. *See Doe v. Davita Inc.*, 2024 WL

1772854, at *2 (S.D. Cal. Apr. 24, 2024) (the pleadings were "devoid of any facts supporting [plaintiffs'] contention that th[e interception at issue] took place."); *Doe v. Amgen, Inc*., 2024 WL 575248, at *3 (C.D. Cal. Jan. 29, 2024) ("[p]laintiff's allegations [about] the presence of the Meta Pixel on [the d]efendant's website … [and the] purported configurations of the Meta Pixel[] … [were] generic[, ]devoid of factual support[, and] … based [o]n information and belief[.]") (cleaned up); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) ("[p]laintiffs fail[ed] to factually support their contention that the[ interception at issue] took place."); *Doe I v. Google LLC*, 2024 WL 3490744, at *6 (N.D. Cal. July 22, 2024) (Google "would only capture activity on pages where [its] source code is present and, as described earlier, the plaintiffs do not adequately allege where on a web property the source code actually exists.")

The fifth case, *B.K. v. Eisenhower Med. Ctr*., 2024 WL 878100, at *4 (C.D. Cal. Feb. 29, 2024) is even further off-point. While *B.K.* does discuss California's WESCA analogue, the CIPA (at *5), the *B.K.* court's CIPA analysis does not touch on the issue of content. Instead, it concerns the party exception. *Id.* At *4, *B.K.* is actually discussing an entirely different (non-wiretapping) law, the California Confidentiality of Medical Information Act (CMIA).

## V. PLAINTIFF SUFFICIENTLY PLEADS FACTS CONCERNING HER "NONPUBLIC PERSONAL INFORMATION," AS DEFINED BY THE GLBA

The MTD (at 10-11, 14-15) then largely rehashes Defendant's points as to Plaintiff Caraffa, just with special attention paid to how the intercepted communications "contain sensitive and confidential information—i.e., 'nonpublic personal information,' as defined by 16 C.F.R. § 313.3[,] the 'Gramm-Leach-Biley Act' or 'GLBA[.]'" FAC ¶ 2. Again, Defendant comes up short.

TD primarily relies on two cases in which alleged WESCA violations were predicated on the interception of HIPAA-protected health information: *Santoro v. Tower Health*, 2024 WL

1773371 (E.D. Pa. Apr. 24, 2024) (discussed by the MTD at 11, 14-15) and *Smart v. Main Line Health*, 2024 WL 2943760 (E.D. Pa. June 10, 2024) (discussed by the MTD at 10-11, 15).

These cases were decided in the wake of and closely track *Murphy* (discussed *infra*, § IV.). The sticking point in all three cases was whether the plaintiff(s) had put the defendant(s) on adequate notice. *See Murphy*, 2023 WL 7017734, at *3 ("the phrase 'highly confidential information' [i]s too conclusory to satisfy *Twombly*. … To provide [defendant] with sufficient notice of its alleged misconduct, [p]laintiffs must offer more detailed descriptions of the communications and information that they assert were intercepted."); *Santoro*, 2024 WL 1773371, at *4 ("[plaintiff] generally avers [that s]ince 2018, [he] has used [defendant's] website to engage in communications that included individually-identifiable health information[.] … [But] we cannot determine what information [plaintiff] actually communicated to [defendant] via his web browsing, and thus cannot tell whether that information might be covered by HIPAA.") (cleaned up); *Smart*, 2024 WL 2943760, at *3 ("The Amended Complaint only avers generally that[ s]ince 2018, [plaintiff] has used [defendant's] website to engage in communications that included individually-identifiable patient health information[.] … This Court cannot conclude from these general averments what information [p]laintiff actually communicated with [defendant] via his web browsing and when exactly such information was communicated.").

Plaintiff's allegations include much more than "general" allegations of misconduct. In fact, Plaintiff's allegations are so precise, they include the exact **day** that Defendant encroached upon her WESCA rights: "**March 13, 2024**, Plaintiff Caraffa visited the Website on the same browser that she used to access Facebook." FAC ¶ 6 (emphasis added). *Cf. Santoro*, 2024 WL 1773371, at *4 ("[plaintiff] generally avers [that s]ince 2018, [he] has used [defendant's] website"); *Smart*, 2024 WL 2943760, at *3 ("[plaintiff] avers generally that[ s]ince 2018, …").

Plaintiff then provides concrete, specific proof of Defendant's violation of Plaintiff's privacy: "an image of Plaintiff's activity off Meta technologies," shown below. FAC ¶ 6.




This image "evince[es] activity received from the Website[]" (*id.* ¶ 6), as explained by Meta on its website (cited *id.* ¶ 6 n.1). Meta's page, https://www.facebook.com/help/2207256696182627, makes clear: FAC ¶ 6's screenshot shows "[h]ow [Meta] received [Plaintiff's] activity" – on td.com. And the image shows Plaintiff's information was "[r]eceived 03/13/2024[,]" just like FAC ¶ 6 says.

This puts the MTD's GLBA-related points to rest. The Gramm-Leach-Biley Act covers "**[a]ny information** [a financial institution] collect[s] through an Internet 'cookie' (**an information collecting device from a web server**)." FAC ¶ 17 (emphasis added) (citing 16 C.F.R. § 313.3(o)(2)(F)); *see also id.* ¶ 16. Clearly, FAC ¶ 6 establishes that TD, a financial institution, collected Plaintiff's information through such a device.

**CONCLUSION**

For the foregoing reasons, Defendant's motion should be denied in full.

Dated: November 12, 2024

Respectfully submitted,

**SHUB & JOHNS LLC**

By: */s/ Benjamin F. Johns*
Benjamin F. Johns

Benjamin F. Johns (SBN 201373)
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
Email: bjohns@shublawyers.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta*
Joshua D. Arisohn*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com
jarisohn@bursor.com

**BURSOR & FISHER, P.A.**
Brittany S. Scott*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: bscott@bursor.com

**Pro Hac Vice*

*Attorneys for Plaintiff and the Putative Class*